STATE EX REL. DEPARTMENT OF AGRICULTURE, Petitioner, vs. McCARTHY, Circuit Judge, Respondent.

*June 14—June 18, 1941.*

266

*R. M. Orchard,* assistant attorney general, *Fred M. Wylie,* and *Gilbert F. Lappley,* all of Madison, for the petitioner.
*Alk, Kresky, Cohen & Hughes* of Green Bay, and *Benton, Bosser, Becker & Parnell* of Appleton, for the respondent.

ROSENBERRY, C. J.    From the petition and the return and the records filed in this court, a regrettable state of affairs is

disclosed. It appears that the action in which the Quaker Dairy Company is defendant was set for trial on April 19, 1941. Prior to the date of trial the defendant dismissed its attorneys and retained Mark Catlin, Jr., an attorney at law then serving as assemblyman at the regular session of the 1941 legislature. Mr. Catlin appeared as attorney for the defendant and in the exercise of the right conferred upon him by sec. 256.13, Stats., demanded an adjournment of the trial pending the adjournment of the legislature, which was granted. Upon the adjournment of the legislature on June 6, 1941, Mr. Catlin ceased to be attorney and the defendant is again represented by its original counsel. It is evident from the record that the sole purpose of retaining Mr. Catlin was to give the defendant the advantage of the provisions of sec. 256.13. We need not comment at this time upon the ethical questions involved in this procedure but point out that the defendant, having availed itself of this devious and most unusual procedure, is in no position to claim that it ever desired or now seeks an early trial of the issues involved in the action.

It appears without dispute that on May 23, 1941, the respondent granted plaintiff's motion continuing the restraining order issued by it on May 13, 1941, in the Richter case and ordered that the same be—

"kept in full force and effect pending the trial and determination of this action and until further order of the court or until a valid license shall have been first issued,"—

ordered the plaintiff to show cause why the order issued on May 13, 1941, and served on the defendant on May 16, 1941, should not be stayed, and pending the hearing of the motion, stayed the order. This order was based upon an affidavit of the defendant setting forth that certain legislation was pending which would substantially vitiate and annul the force and effect of the Appleton-regulated milk-market order. When this order to show cause came on for a hearing, the court

quashed the injunctional order continued on May 13, 1941, and denied plaintiff's motion for an immediate trial.

By order dated June 11, 1941, upon an affidavit made by the president of the defendant, Quaker Dairy Company, to the effect that—

"if this defendant is presently compelled to abide by said restraining order, it will lose its established market of supplies; and it will likewise lose its established customers; and if said Appleton-regulated milk-market order is vitiated by legislative act before the adjournment of the legislature, then this defendant will have suffered an irreparable loss," the court vacated the order of June 4, 1941.

When the order of June 11th was entered, the fact that the legislature had adjourned was a matter of common knowledge. The only basis therefore for the vacation of the restraining order was that unless vacated the defendant company would be obliged to comply with the law.

The legislature adjourned on June 6, 1941, and without having in any way amended or repealed sec. 100.03, Stats., under which section the Department of Agriculture was proceeding with respect to the regulation of the distribution of milk. This section by its terms will expire on December 31, 1941. The respondent in his return does not deny the allegations of paragraphs (13) and (14) of the petition except that he alleges that he granted the motion "solely" for the reason that such injunction would work an irreparable hardship upon the defendants, Quaker Dairy Company and John Richter and Mrs. John Richter. It is manifest from the return of the respondent that the only hardship that would be inflicted upon the defendants or any of them would be a requirement that they comply with the terms of the statute pending the trial of the action. We are cited to no authority and we find none which justifies a court in suspending the operation of a statute duly enacted by the legislature on the ground that it will work a hardship if it be enforced. Whether

or not there shall be a law under which the production and sale of milk should be regulated is a matter wholly within the province of the legislature. When a court undertakes to say that a law shall not be enforced, the court takes over the legislative function and in effect declares that the act of the legislature should be suspended. The enforcement of any regulatory law requires a change in the course of conduct of the persons or business regulated, otherwise there would be no call for regulation. We find no justification whatever for the position of the court with respect to the enforcement of this statute. If the court was of the view that the exigencies of the case were such that the matter should be speedily disposed of, he should have set the case down for an early trial. Especially is that the case here for it appears that the court a short time before was clearly of the view that the defendants in both cases should be restrained from continuing their operations. While it is alleged in the return that the order was issued "solely" for the reasons stated, we do not under all of the circumstances of the case feel bound by that allegation.

The circumstance admitted by the trial judge in the return and the plea upon which the order vacating the injunction was granted point clearly to the fact that respondent was of the view that because the statute would by its own terms expire in six months it ought not to be enforced because of attendant hardship to the defendants. Respondent's actions may do credit to his sympathies and in the proper forum his reasons might elicit considerable lay support. The proper forum, however, is not the court but the legislature. The actions here involved were for the purpose of effectuating a legislative policy which is presently in force. While the legislature has not extended the operation of the law under which these cases were brought, neither has it indicated that enforcement shall not proceed during a period when the law is actually in force. Under these circumstances it is not for a judicial officer to

exercise a discretion or a decision which is the function of the legislature.

Sec. 9 of art. I of the Wisconsin constitution is as follows:

"Every person is entitled to a certain remedy in the laws for all injuries, or wrongs which he may receive in his person, property or character; he ought to obtain justice freely, and without being obliged to purchase it, completely and without denial, promptly and without delay, conformably to the laws."

The justice to be administered by the courts is not an abstract justice as conceived of by the judge, but justice according to law or as it is phrased in the constitution justice "conformably to the laws."

A judicial officer is required to administer the law without respect to persons so long as it is in force. Any other course would constitute an infringement upon the powers and functions of the legislature, interfere with the operation of law-enforcement agencies which have no choice but to enforce the law as long as it is in force, and result in advantage to persons who disobey the law and disadvantage to those who obey it. It must be concluded that the grounds upon which the trial court acted did not constitute a sufficient or proper legal reason therefor and that this action constituted an abuse of judicial power.

In another respect the trial court appears to have erred seriously. It is alleged in the petition, paragraph (16), that at the hearing of June 7th, the judge made an oral statement relative to his position upon this matter, and from affidavits on file it appears that the trial court had dictated at least a part of his version of what took place when he denied the motion for an early trial on June 7th. Upon the oral argument respondent's counsel stipulated that they would produce either the reporter's notes so dictated or a transcription of them. Respondent has filed an affidavit from which it appears that he is unable to furnish this transcript because at his direction the reporter destroyed the notes; that the notes were destroyed because the contents were deemed immaterial and

improper as merely containing remarks complimenting the diligence of one of plaintiff's attorneys; that the remarks were not material to the present controversy, were dictated out of the presence of opposing counsel, are not a part of the record or proceedings, do not express the views of the affiant upon any phase of this case or contain anything relevant or material to the action. Ordering destruction of these notes was highly improper. In this proceeding this court is the judge of the materiality of the notes. According to the affidavits the notes did present respondent's own statement of the reasons for his action. If true, the dictated statement had a direct bearing on the only debatable issue in this case, namely, the reasons actuating respondent. It should not be necessary to labor the point that the trial court in ordering destruction of the notes misconceived his function and mistakenly arrogated to himself the powers of this court. While in the state of the pleadings it is held that the grounds for the trial court's actions sufficiently appear without the notes, we can only say that if it were necessary to a decision, the destruction of evidence under these circumstances could only be open to the inference that the evidence destroyed contained statements of fact contrary to the position taken by the person destroying the evidence. 2 Wigmore, p. 180, § 291, cases cited note 2. See also *Dimond v. Henderson* (1879), 47 Wis. 172, 175, 2 N. W. 73. It is the conclusion of the court that the record shows an infringement upon the prerogatives of the legislature amounting to an abuse of judicial power. This brings the matter within the scope of the supervisory jurisdiction. *State ex rel. Fourth Nat. Bank of Philadelphia v. Johnson* (1899), 103 Wis. 591, 79 N. W. 1081; 51 L. R. A. 1; March, 1941, Wisconsin Law Review, p. 153, The Power of Superintending Control of the Wisconsin Supreme Court, JOHN D. WICKHEM.

*By the Court.*—Upon all the records and files in this action, it is ordered, that a writ of *mandamus* be issued out of this court, directed to the respondent, requiring him forthwith,

(1) to vacate the orders staying and vacating the injunctional orders issued in each case. (2) In the case of State *ex rel.* Department of Agriculture v. John Richter and Mrs. John Richter, to reissue and re-enter the restraining order of May 13, 1941, and to continue the same in force until the case is disposed of upon the merits by the entry of a final judgment. (3) In the case of State *ex rel.* Department of Agriculture v. Quaker Dairy Co., to reissue and re-enter the restraining order of May 20, 1941, and to continue the same in force until the case is disposed of upon the merits by the entry of a final judgment.